IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| MALIN INTERNATIONAL SHIP REPAIR & DRYDOCK, INC. | § § § | |
| VS. | § § | CIVIL ACTION NO. G-12-304 |
| OCEANOGRAFIA, S.A. DE C.V. | § § | |

<u>**OPINION AND ORDER**</u>

  Before the Court are the "Motion to Vacate Seizure of the M/V KESTREL and for Attorney's Fees and Costs" of Defendant, Cal Dive Offshore Contractors, Inc. (Cal Dive), the owner of the vessel, and the "Motion to Vacate Malin's Rule B Attachment" of Defendant, Oceanografia S.A. de C.V. (OSA), the bareboat charterer of the vessel; both Motions presently seek to vacate the attachment of the fuel bunkers aboard the M/V KESTREL by Plaintiff, Malin International Ship Repair & Drydock, Inc. (Malin) for unpaid invoices allegedly owned by OSA.

Having now considered all the relevant submissions of the Parties, the Court issues this Opinion and Order.

  According to Malin, OSA, a Mexican corporation, owes it over $229,00.00 for work it performed on vessels in 2008 and 2009; the work included, *inter alia*, loading of equipment and fabrication on the vessels which qualifies as maritime work. Just prior to the filing of this suit to collect all or some of the debt, Malin was performing work on the M/V KESTREL, a vessel owned by Cal Dive. On or about October 18, 2012, Malin received information which led it to believe that OSA had acquired the M/V KESTREL. As a result, Malin filed this suit and had the M/V KESTREL arrested under Admiralty Rule C. Shortly thereafter, Malin learned that OSA had only bareboat chartered the M/V KESTREL and Malin promptly amended its complaint, abandoned its

seizure of the vessel itself, and attached, instead, the vessel's bunkers under Admiralty Rule B. Cal Dive and OSA have each made a restricted appearance under Admiralty Rule E(8) and moved to vacate the attachment of the bunkers. Cal Dive and OSA have asserted, through numerous filings, various challenges to the attachment. The Court will address the challenges *seriatum*.

Cal Dive argues that Malin has not alleged a valid maritime claim because "a ship building contract does not give rise to a maritime claim under federal law." Cal Dive cites SCS Shipbuilding Co. v. Ionia Management S.A., 2011 WL 2652365 *4 (S.D. Tex. 2011)   Cal Dive's recitation of this principle of maritime law is correct, but Malin's work was not shipbuilding. Malin, *inter alia*, loaded equipment, made physical modifications to the vessels to secure the equipment for transportation, tied down equipment for shipping and removed equipment from the vessels. These services are considered "necessaries"; they "are useful to the vessel, keep her out of danger and enable her to perform her particular function." Equilease Corp. v. M/V SAMPSON, 793 F.2d 598, 603 (5th Cir. cert. denied 579 U.S. 984 (1986)   Indeed, the services performed by Malin on the vessels would give rise to a maritime lien under the Federal Maritime Lien Act, 46 U.S.C. § 31342. While some of Malin's work may have been non-maritime, a substantial part of the work, as itemized on Malin's invoices, was without doubt maritime in nature. Cf. Inbesa America, Inc. v. M/V ANGILA, 134 F.3d 1035, 1038 (11th Cir. 1998)   Consequently, Malin's breach of contract claim is a maritime claim creating admiralty subject matter jurisdiction which brings Rule B into play.

Even if Malin's contract claim is maritime, Cal Dive asserts it is no longer valid because it has "lached" due to the passage of time; Cal Dive also notes that the claim would be barred under the four year statute of limitations in Texas. This Court, however, agrees with Malin's position that

2

it is premature to consider any time-bar issue.  OSA is a Mexican corporation, with no presence in this District, that has failed to pay Malin's overdue bills.  Whether Malin fatally delayed pursuing its claims against OSA will be a merits determination which is inappropriate at this juncture.  The Court must assume the validity of the claim and permit the merits, or lack thereof, to be developed for a full and fair determination.  <u>South Carolina State Ports Authority v. Silver Anchor S.A. Panama</u>, 23 F.3d 842, 847-48 (4th Cir. 1994)

      Both Cal Dive and OSA argue that OSA did not own the bunkers at the time of the attachment because OSA had not yet paid Cal Dive for the fuel, but this Court is of the opinion that OSA had a sufficient possessory interest in the bunkers to justify their attachment. OSA executed the bareboat charter agreement with Gulf Offshore Construction, Inc. (GOC), a subsidiary of Cal Dive, on September 12, 2012.  The charter had an effective date of August 22, 2012.  The agreement provided that OSA "shall purchase the bunkers" at the time of delivery.  On October 15, 2012, OSA took delivery of the M/V KESTREL with the bunkers full and available for use by OSA.  As part of the agreement OSA had paid about $1,700,000.00 toward charter hire and provided a Letter of Credit for over $800,000.00 for the benefit of GOC.  The Defendants' argument is premised upon the fact that, despite OSA's right to burn the fuel, GOC had not yet invoiced OSA for the bunkers and, therefore, GOC was still the owner of the fuel.  In support, they rely on some cases which address the status of electronically transferred funds (ETFs) in the temporary possession of intermediary banks.  <u>See</u> <u>e.g.</u> <u>City Shipping Corp. of India v. Jaldhi Oversees PTG</u>, 585 F.3d 58 (2$^{d}$ Cir. 2009) (EFTs, under New York law, are not the property of either the originator or beneficiary at the time they are held by an intermediary bank and, therefore, are not the defendant's property for purposes of a Rule B attachment.)   More to the point, they rely on the case of

3

Wavemaker Shipping Company, Ltd. v. Hawkspere Shipping Company, Ltd., 56 Fed. Appx. 594 (4th Cir. 2003), which held that, under English law, the title to fuel bunkers remained with the fuel supplier where the Standard Marine Fuel Purchasing Contract between the supplier and the charterer contained a "retention of title" clause which expressly provided that supplier retained title to the bunkers until payment was actually received.  This Court finds the Defendants' reasoning unpersuasive.  There is no retention of title clause in the bareboat charter agreement in this case and the Court is not prepared to treat the State of New York's law concerning EFTs the same as the ancient maritime law relating to the attachment of fuel bunkers.  Instead, this Court finds the opinion of District Judge Duval in World Fuel Services, Inc. v. SE Shipping Lines, PTE, Ltd., 2011 WL 44653 (E.D. La), more appropriate.  Judge Duval reasoned that because Rule B does not identify the specific legal interest in the property a defendant must have before it is subject to attachment and, absent actual payment, the defendant could never literally own the bunkers, the defendant's rights to possess and burn the fuel created a sufficient interest to support a Rule B attachment.  The Court is comfortable with this approach, especially since GOC has direct access to the Letter of Credit which, the Court assumes, is more than sufficient to pay for all, or a large portion of, the bunkers.  Cf. Prime Shipping Co., Ltd. v. Wajliam Exports PTE, Ltd., 2000 WL 1539330 (S.D. N.Y.)   (A fundamental principle of Letters of Credit is that the issuing bank's obligation to honor drafts drawn on the line of credit by the beneficiary is separate and independent of any obligation of its customer to the beneficiary under a sale of goods contract and separate as well from any obligation of the issuer to its customer under their agreement.)   GOC could have easily extracted payment for the bunkers from the line of credit following the delivery of the M/V KESTREL to OSA on October 15, 2012, as expressly provided by the Charter; its failure or refusal to do so before the M/V KESTREL

could motor out of this Court's jurisdictional waters should not impede Malin's entitlement, if any, to the maritime remedy of a Rule B attachment which is designed to create quasi-in-rem jurisdiction over the property of a defendant not otherwise subject to service of process in the District of suit.

Cal Dive also complains that it was inequitable for Malin to "effectively seize" its $20,000,000.00 vessel for a mere $230,000.00 debt. In the opinion of this Court, Cal Dive misconstrues the Doctrine of Equitable Vacatur. Equitable vacatur is not appropriately applied just because the value of a vessel vastly exceeds the fairly stated value of the plaintiff's claim; if it were, only an enormous indebtedness could sustain the attachment of a defendant's property aboard any substantial vessel. Equitable vacatur of a Rule B attachment is appropriate "only in certain limited circumstances, for example, when the defendant can demonstrate that 1) (it) is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the District where the plaintiff is located or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." Agua Stoli Shipping Ltd. v. Gardner Smith PTY., Ltd., 460 F.3d 434, 445 ($2^d$ Cir. 2006) see also, Pro Ship Line, Inc. v. Aspen Infrastructures, Ltd., 585 F.3d 105, 113 ($2^d$ Cir. 2009) (cited by Cal Dive in support of its Motion). As demonstrated above, the circumstances giving rise to the application of equitable vacatur are not present in the case at bar.

In addition, Cal Dive maintains that OSA can be "found" within this district and attachment was, therefore, precluded under Rule B. This Court respectfully disagrees. The proposition that Malin could serve OSA, a Mexican corporation, by service upon the Texas Secretary of State is flawed: the Office of Secretary of State is located in Austin which is in the Western District of Texas, consequently, service upon the Secretary cannot be accomplished "within the district" of suit.

5

LaBanca v. Ostermunchner, 664 F.2d 65, 67 (5th Cir. 1981) (Error to quash Rule B attachment on grounds plaintiff, who filed suit in Middle District of Florida, could serve defendant through Secretary of State in Tallahassee in the Northern District of Florida.)  Cal Dive further argues that because Malin was engaged to render services for OSA in Galveston, there are sufficient minimum contacts with this District to support *in personam* jurisdiction over OSA, but for a defendant to be "found within the district" for purposes of Rule B requires the defendant have minimum contacts within the district to meet the due process standard **and** be able to be served with process in the district.  Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002)   OSA is not subject to service of process in the Southern District of Texas.  Service of process on the vessel's master, as suggested by Cal Dive, would not be effective to establish *in personam* jurisdiction over OSA in this suit to collect the sums due under Malin's invoices; the Court suspects that is precisely why OSA made only a limited appearance in this action pursuant to Rule E(8) to challenge the quasi-in-rem jurisdiction over the bunkers.  Certainly, the master of the vessel is an appropriate person to notify of the vessel's arrest or the bunker's attachment, but OSA's limited appearance belies its belief that "service" upon the vessel master created *in personam* jurisdiction over it.

     Finally, Cal Dive accuses Malin of not exercising due diligence to determine that Cal Dive owned the M/V KESTREL before having it arrested.  Malin has alleged that it received communications directly from Cal Dive which led it to believe OSA had purchased the M/V KESTREL. Once the charter party was produced, Malin promptly released the vessel and attached the bunkers.  In fact, Cal Dive's Motion to Vacate was not filed until the day after Malin had released the vessel.  At the time the vessel was arrested, the charter agreement was in effect, consequently, as a practical matter, its brief arrest caused no harm to Cal Dive since it had delivered

6

the vessel to OSA and it had already been paid the charter hire for that period of time.  The only apparent harm would have been caused to OSA; however, since the seizure of the bunkers appears justified and would have kept the vessel from leaving anyway, OSA's allegations of damage caused by the vessel's arrest are disingenuous.  OSA's "fruit of the poisonous arrest" argument that a party may not benefit through attachment from a wrongful arrest is without merit.  See MMI International, Inc. v. M/V SKYROS, 1991 AMC 1264, 1270 (N.D. Cal. 1991) ("There seems no reason to hold that a wrongful arrest of one person's ship under Rule C renders a valid attachment of another person's property under Rule B also wrongful.")   OSA's argument would thwart one of the basic purposes of Rule B:  to assure satisfaction, up to the value of the attached property, in case the plaintiff's suit is successful.  Swift & Co. Packers v. Compania Columbiana Del Carib, S.A., 330 U.S. 684, 493 (1950)

For all of the foregoing reasons, it is the **ORDER** of this Court that "Cal Dive Offshore Contractors, Inc.'s Motion to Vacate Seizure of the M/V KESTREL and for Attorney's Fees and Costs" (Instrument no. 13) and "Oceanografia's Motion to Vacate Malin's Rule B Attachment" (Instrument no. 18) are **DENIED** without prejudice to being reasserted at an appropriate time after sufficient discovery.

**DONE** at Galveston, Texas, this _____9th_____ day of January, 2013.

_____
John R. Froeschner
United States Magistrate Judge