UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MALIN INTERNATIONAL SHIP REPAIR & DRYDOCK, INC., | § § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-304 |
| | § | |
| OCEANOGRAFIA, S.A. DE C.V., *et al*, | § § | |
| Defendants. | § § | |

## **MEMORANDUM AND ORDER**

This is an action by Plaintiff Malin International Ship Repair & Drydock, Inc., a shipping repair facility in Galveston, to recover for an alleged breach of contract by Defendant Oceanografia, S.A. de. C.V. Oceanografia is a Mexican Corporation with no offices or operations in Texas. In October 2012, Malin filed suit, obtained an order of attachment from the magistrate court under Supplemental Admiralty Rule B, and seized the bunkers aboard Oceanografia's chartered vessel, the M/V Kestrel. Oceanografia and Defendant Cal-Dive Offshore Contractors, Inc., the vessel's owner, promptly moved to vacate the attachment.

In January 2013, the magistrate court submitted an opinion recommending that this Court deny the motions to vacate. *See* Docket Entry No. 34. Oceanografia and Cal-Dive timely filed objections, and Malin responded in support of the magistrate court's conclusions. *See* Docket Entry Nos. 39; 40; 41. After reviewing *de novo* the facts of the case and the applicable law, the

recommendation of the magistrate court, and the parties' submissions, the Court agrees with the magistrate court that the attachment was proper. However, because of the number of issues raised in the objections, the Court writes separately to provide additional detail on why it agrees with the magistrate court on certain issues. The Court **ADOPTS** the magistrate court's reasoning in all other respects.

## I. MARITIME JURISDICTION

Cal-Dive first argues that Malin's seizure of the M/V Kestrel's bunkers was invalid because this Court does not have maritime jurisdiction over this case. On this point, the magistrate court concluded that jurisdiction existed because "a substantial part of the work" Malin did for Oceanografia "was without doubt maritime in nature." Docket Entry No. 34 at 2. In its objections, Cal-Dive contends that maritime jurisdiction is not present because a number of the invoices Malin sued on were not wholly maritime.

Because Malin's suit is for breach of contract, the Court looks to whether the contract sued on supports the exercise of maritime jurisdiction. *See Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 186 (5th Cir. 2010) ("A party may only seek Rule B attachment if the underlying claim satisfies admiralty jurisdiction under 28 U.S.C. § 1333." (internal quotation marks and citation omitted)). As Cal-Dive contends, jurisdiction exists when the underlying contract is wholly maritime. *See Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 290

(5th Cir. 1989). However, "mixed" contracts containing both maritime and non-maritime elements will nonetheless support jurisdiction in two circumstances:

> First, if the character of the contract is primarily maritime and the non-maritime elements of the contract are incidental, the incidental non-maritime aspects of the contract will not defeat admiralty jurisdiction. Second, if a contract's maritime obligations are separable from its non-maritime aspects and can be tried separately without prejudice to the other, admiralty jurisdiction will support trial of the maritime obligations.

*Lucky-Goldstar, Int'l (Am.) Inc. v. Phibro Energy Int'l, Ltd.*, 958 F.2d 58, 59 (5th Cir. 1992) (citations omitted). An examination of the invoices Malin attached to its complaint, *see* Docket Entry No. 1-1, reveals that most of the contracted work was for such traditional maritime activities as loading and unloading equipment and supplies from vessels operated by Oceanografia. *See Hertz v. Treasure Chest Casino, L.L.C.*, 274 F. Supp. 2d 795, 802 (E.D. La. 2003) ("[C]ontracts concerning the loading or the offloading of cargo to and from ships . . . are considered maritime wherever they are negotiated and signed." (citations omitted)). All of the non-maritime elements that appear in the invoices are either incidental to the maritime elements, *see, e.g.*, Docket Entry No. 1-1 at 7 (moving equipment from a truck on land to a vessel), or appear in discrete, separate line-items not connected to maritime work, *see, e.g., id.* at 12 (using a crane to move equipment on the dock). Thus, the contracts are sufficient to support the exercise of maritime

jurisdiction under the standard recited in *Lucky-Goldstar*, and Cal-Dive's objection on this point fails.

## II. ATTACHABLE INTEREST

Most of the parties' briefing focuses on whether Oceanografia had an attachable interest in the M/V Kestrel's bunkers. Cal-Dive and Oceanografia argue that attachment was improper because Oceanografia had not paid for the fuel at the time of attachment and thus did not own the bunkers. Malin argues in response that, even if Oceanografia had not yet paid for the fuel, it had a possessory interest in the bunkers sufficient for attachment under Rule B.

The Court agrees with the magistrate court that Oceanografia's interest in the bunkers was sufficient for attachment under Rule B. The rule does not require that a defendant have a particular type of interest in the property at issue; rather, its text is broadly worded, stating simply that a plaintiff may "attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hand of garnishees." Supp. Admiralty R. B(a)(1); *see also World Fuel Servs., Inc. v. SE Shipping Lines Pte., Ltd.*, No. 10-4605, 2011 WL 446653, at *2 (E.D. La. Feb. 4, 2011) (holding that a possessory interest, rather than full ownership, was sufficient for attachment because "Rule B does not identify the specific legal interest in the property that a defendant must have before it is subject to seizure").

Judge Learned Hand addressed a similar issue over 80 years ago when interpreting Rule B's forerunner in *Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 F.2d 265 (2d Cir. 1929). Like how in this case Oceanografia contracted to pay for the bunkers as part of its charter agreement with Cal-Dive and thus had a right to possess and use the fuel, the defendant in *Kingston* had possession of two canal boats it had purchased, though it had no title under the sales contract because it had not made payment to the seller at the time of attachment. *Id.* at 265. Judge Hand concluded that common law principles supported the sufficiency of possession for attachment because, although "a conditional buyer has no title . . . [i]t would be curious if possession, coupled with a conditional right to title, could now be thought insufficient to support a seizure." *Id.* at 266–67. The Court finds this reasoning persuasive. It would defeat the twin purposes of Rule B—securing Oceanografia's appearance and assuring satisfaction if Malin's suit is successful, *see Heidmar, Inc. v. Anomina Ravennate di Armamento SP.A.*, 132 F.3d 264, 268 (5th Cir. 1998)—if Oceanografia were allowed to enjoy the use of the M/V Kestrel and its bunkers, but, by refraining from paying Cal-Dive until the vessel left port, keep its interest in the bunkers immune from seizure.

To make their argument that attachment is never proper under Rule B unless the defendant has title to the property, Defendants rely on *Shipping Corp. of India*

*Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009), a Second Circuit case in which the court noted that "[f]or maritime attachments under Rule B . . . the question of ownership is critical." *Id.* at 69. But *Jaldhi* (which dealt with the narrow issue of attachment of electronic funds transfers held by an intermediary bank) did not, as Defendants argue, set a blanket rule requiring full ownership as a prerequisite for attachment. Rather, the court focused on whether the defendant had an undefined "property interest" in the EFTs at issue in that case under New York law. *Id.* at 68–69, 71. As a result, *Jaldhi*, to the extent that it is relevant, merely reinforces the conclusion that some interest less than full ownership is sufficient for attachment. The magistrate court correctly concluded that Oceanografia had an attachable property interest in the M/V Kestrel's bunkers.

### III. STATUTE OF LIMITATIONS

Cal-Dive also objects to the magistrate court's proposed order on the ground that Malin's claims are barred by Texas's four-year statute of limitations for contract cases. According to Cal-Dive, Malin's claims are all for work done over four years before Malin filed its original complaint on October 15, 2012. *See* Docket Entry No. 1-1 (attaching invoices listing work done before October 15, 2008). However, there are fact issues preventing the Court from evaluating the merits of the defense at this stage of the case. Under Texas law, a breach of contract claim accrues when the breach occurs, which, in this case, would be when

Oceanografia failed or refused to make a payment then due. *See Khan v. Trans Chemical Ltd.*, 178 F. App'x 419, 424 (5th Cir. 2006) (per curiam) (citing *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002)). It is unclear from the record whether a failure to pay occurred before or after October 15, 2008. The invoices clearly state that the amounts owed were "due upon receipt," at least one job was not invoiced until October 21, 2008, and there is no evidence regarding when Oceanografia received the invoices. *See* Docket Entry No. 1-1 at 3. Thus, because determining whether any of Malin's claims are time-barred will require more factual development, the magistrate court correctly concluded that the statute of limitations defense should not be considered at this early stage of the case.

## IV. CONCLUSION

Because maritime jurisdiction exists, Oceanografia had an attachable interest in the M/V Kestrel's bunkers, and issues remain concerning Oceanografia's statute of limitations defense, the magistrate court correctly recommended denying the motions to vacate on those grounds. The Court **ADOPTS** the magistrate court's proposed opinion (Docket Entry No. 34) in all other respects and **DENIES** the motions to vacate (Docket Entry Nos. 13; 18).

**SIGNED** this 22nd day of August, 2013.

_____
Gregg Costa
United States District Judge